UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   AUG 1 4 2008

P.M.
TIME A.M.

--------------------------------------------------------X

MAURICE DUDLEY,

                Plaintiff,

    - against -

CORRECTION OFFICER TRENT
PENDAGRASS; VALERIE MEEKINS; THE
CITY OF NEW YORK; P.O. SUAREZ; P.O.
LEITER; P.O. JOHN DOE; M.D. JOHN DOE;
M.D. BOB DOE; and SERGEANT JOHN DOE,

                Defendants.

**REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
06 CV 216 (RJD) (LB)**

--------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

       Plaintiff, Maurice Dudley, brings this *pro se* action against defendants alleging false arrest and

imprisonment, excessive force, and deliberate indifference to his serious medical need pursuant to 42

U.S.C. § 1983 ("§ 1983"). Plaintiff seeks declaratory and injunctive relief as well as monetary

damages. The City of New York and Police Officer Suarez ("Suarez"), move for summary judgment

pursuant to Federal Rule of Civil Procedure 56(c).[1] The Honorable Raymond J. Dearie referred

defendants' motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 626(b).

It is respectfully recommended that defendants' motion[2] should be granted for the following reasons.

---

    [1] Defendants gave plaintiff the requisite notice under Local Civil Rule 56.2.

    [2] Defendants Meekins and Pendergrass (incorrectly sued as "Pendagrass") have moved separately
to vacate the entry of default against them. Defendant Leiter has not appeared in this action.



# BACKGROUND

Plaintiff's complaint alleges that on January 15, 2003, he encountered Valerie Meekins ("Meekins"), with whom plaintiff has an unfortunate history,[3] and Trent Pendergrass ("Pendergrass") (incorrectly sued as "Pendagrass"), in the Bedford Stuyvesant neighborhood of Brooklyn where he was working that day. Plaintiff tried to file a complaint against Meekins and Pendergrass at the 79th Precinct, but an unidentified officer refused to allow him to do so. Plaintiff further alleges that an unidentified officer falsely arrested and falsely imprisoned him later on January 15, 2003. While detained at the police station, plaintiff alleges that unidentified officers used excessive force to remove his shoelaces and belt, and that he was denied medical attention.

On the date at issue, plaintiff was driving an Enterprise Transportation oil truck on a route in Bedford Stuyvesant, Brooklyn. Complaint ("Compl."), Statement of Facts ¶ 1; Defendants' Statement Pursuant to Local Rule 56.1 ("56.1 Statement") ¶ 7.[4] Plaintiff "noticed he was being

---

[3] Plaintiff has filed four prior cases alleging that Meekins, the estranged mother of his two children, has repeatedly filed false complaints against him and used her position as a corrections officer to have him arrested. Plaintiff named Meekins as a defendant in the following actions in this Court: Dudley v. Meekins, et al., 98-CV-3237, Dudley v. New York City Department of Corrections, et al., 98-CV-5215, Dudley v. New York State, et al., 01-CV-8536 (all resolved by a settlement agreement so ordered by the Court on November 27, 2002), and Dudley v. Torres, 05-CV-1729 (case dismissed on May 21, 2008).

[4] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). Plaintiff did not file a counter-statement under 56.1(b) controverting the facts in defendants' 56.1 statement. As such, the Court may deem the facts in defendants' Rule 56.1 statement admitted. See Local Rule 56.1(c). However, the Court may not rely solely on the statement of undisputed facts contained in the Rule 56.1 statement: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5. Therefore, the Court deems admitted only those facts in defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by the record.

2

followed and/or harrassed [sic] by def, Trent Pendagrass [sic] of the NYC Department of Correction." Compl., Statement of Facts ¶ 1; 56.1 Statement ¶ 9. Plaintiff went to the 79th Precinct to file a complaint against Pendergrass and to explain that an order of protection directing plaintiff to stay away from Meekins was the likely reason Pendergrass was following him. Compl., Statement of Facts ¶ 2; 56.1 Statement ¶ 10. On or about November 4, 2000, Kings County Supreme Court Justice Matthew D'Emic ordered plaintiff to stay away from Meekins and "refrain from assaulting, harassing, menacing, intimidating or threatening her."[5] The Order was effective for four years, or until November 4, 2004. Criminal Court Complaint, annexed to Declaration of Johana Castro ("Castro Decl.") as Exhibit E ("Crim. Compl."); 56.1 Statement ¶ 5. After an unidentified officer told plaintiff that he was too busy to take his complaint and to come back later,[6] plaintiff left the precinct and returned to his truck. Compl., Statement of Facts ¶¶ 2-3; 56.1 Statement ¶¶ 11-12.

Plaintiff alleges that when he got back to the truck and got in, Meekins and Pendergrass stepped out into the street in front of the truck to provoke an incident. Pendergrass "grabbed open plaintiff's drivers side door and began seeking to snatching [sic] plaintiff." Meekins "threw a writing pen at the plaintiffs [sic] head seeking to cause damage." Then, Pendergrass started to fight plaintiff and "punched plaintiff in the head two times," and Meekins "grabbed the plaintiff [sic] arm and yanked plaintiff, Maurice Dudley backwards causing plaintiff, Maurice Dudley to trip backwards." Compl., Statement of Facts ¶ 3; 56.1 Statement ¶¶ 13-15.

---

[5] This same order of protection was at issue in Dudley v. Torres, 05-CV-1729 (RJD)(LB) (dismissed on May 21, 2008), in which plaintiff alleged that he was falsely arrested in 2001.

[6] Plaintiff alleges that the officer who would not file his complaint was "P.O. Leiter." This defendant has not appeared in this action. Defendants state that "upon information and belief, there is no individual in the New York City Police Department with the name 'Leiter.'" Def. Mem. at 1 n.1.

Plaintiff tried to get back in the truck and return to the 79th Precinct, but alleges that Meekins "open [sic] the door of the plaintiffs [sic] Oil Truck took they keys out [sic] the truck leaving the truck running with over 2500 gals full of fuel placing the plaintiff [sic] life and other life in danger." Plaintiff had to walk back to the 79th Precinct, as Meekins ran ahead with the truck keys, and Pendergrass "continue to call plaintiff, Maurice Dudley back so that he could continue to cause injury." Compl., Statement of Facts ¶ 4; 56.1 Statement ¶ 16. Back at the precinct, Meekins "filed a false police report . . . stating that the plaintiff, Maurice Dudley drove his company oil truck through her block on three separate occassion [sic] on January 15, 2003, and blew his horn and that a fourth time the plaintiff, got out of his company oil truck to fight her without any cause." Compl., Statement of Facts ¶ 6; 56.1 Statement ¶¶ 21-22. Meekins also complained that the fourth time he drove by, plaintiff threatened he was going to kill her. 56.1 Statement ¶ 22.

Based on Meekins's report, Officer Suarez arrested plaintiff and processed him at the 79th Precinct. Compl., Statement of Facts ¶ 7; 56.1 Statement ¶ 24. At his deposition, plaintiff was asked about his statement when he was arrested "I'm going to sue all of you guys. I know about the order of protection. It's not like I tried to run her down with the truck." Plaintiff confirmed that he said that, and that he knew about the order of protection, but stated that "[i]t's not that I come around here to cause any problems." Plaintiff's Deposition Transcript, annexed to Castro Decl. as Exhibit D ("Dep.") at 121:20-24, 122:1-2; 56.1 Statement ¶ 25.

After he was arrested, processed, and placed in a holding cell at the precinct, plaintiff alleges that he was "assaulted again" by unidentified officers "while plaintiff was laying down on the bench in a cell handcuff[ed]," because he "refused to take off his belt and shoe strings in which he needed

to support both pants and shoes." Compl., Statement of Facts ¶ 7; 56.1 Statement ¶¶ 26-28. Plaintiff describes the following events:

> When the sergeant came to the cell and said you not going to take off your belt and shoelaces? And I said no. My belt is used to hold up my pants and my shoelaces is so I can keep my shoes on my feet. So I didn't see any purposes in taking it off. If you think I'm going to hang myself, it's very difficult, not unless I'm David Blaine that I could [hang] myself with my hands behind my back. So if you want to leave me handcuffed and you think it's for my safety to have my belt and shoelaces off, I don't see how I'm going to hang myself. I don't think it's necessary. I'm handcuffed. There's no way I could hang myself.

Dep. at 131:22-132:8. The first officer then "placed his knee directly into plaintiff's chest while he laid on the bench handcuffed," while "the other officers cut plaintiff's belt and shoe laces off." Compl., Statement of Facts ¶ 7; 56.1 Statement ¶¶ 31-34. Plaintiff cannot identify the officers as he had his eyes closed. Compl., Statement of Facts ¶ 7; 56.1 Statement ¶¶ 29-30.

Plaintiff alleges that he requested medical attention for the pain in his head from the fight with Pendergrass and for the pain in his chest from the forcible removal of his belt and shoelaces, and was eventually taken to the hospital "about a half hour, 45 minutes later." Compl., Statement of Facts ¶ 8; 56.1 Statement ¶¶ 37-38; Dep. at 138: 5-6. There, plaintiff complained that he was "beaten by [his] ex-girlfriend's boyfriend," that he was "punched twice [on the] left side of head," and that "when he was down on the ground" he was "push[ed] down with knee to chest." Woodhull Medical and Mental Health Center Records, annexed to Castro Decl. as Exhibit I ("Med. Recs."); 56.1 Statement ¶¶ 39-43. X-rays showed no fractures; plaintiff was given Motrin and an ice pack, and was discharged from the hospital. Med. Recs.; 56.1 Statement ¶¶ 44-45. He did not seek further medical treatment. 56.1 Statement ¶ 46.

From the date of his arrest on January 15, 2003, until he ultimately pled guilty to second-degree criminal contempt on October 18, 2004, plaintiff was held, indicted by a Grand Jury, found "not fit to proceed" with his criminal defense under New York Criminal Procedure Law § 730, adjudicated an incapacitated person, and admitted to Mid-Hudson Forensic Psychiatric Center for approximately one month. Following his guilty plea, plaintiff was sentenced to a one-year conditional discharge and a three-year order of protection. 56.1 Statement ¶¶ 47-53.

Plaintiff alleges that Suarez lied to the Grand Jury and to the Supreme Court, and that Meekins lied to the District Attorney. Compl., Statement of Facts ¶¶ 10-11, 14. Plaintiff further alleges that the City of New York has "a custom, policy and practice of not reviewing illegal acts and/or prejudice [sic] acts committed by . . . defendants for the 79th precinct who make arrest [sic] and prosecute citizens who are being accused of willfully [sic] in violation of a Court Order of Protection," and that the City failed to train the defendant-officers to "adequately discourage further constitutional violations on part of its agents and representatives." Compl., Statement of Claim ¶¶ 46, 66.


## PROCEDURAL HISTORY

Plaintiff filed his original complaint on January 13, 2006. On February 10, 2006, plaintiff's claims against defendants the State of New York, New York City Police Department, New York City Department of Corrections, Assistant District Attorney Evelyn Laporte, Wanda Fields and Robert Talentola were dismissed. Plaintiff's remaining claims were allowed to proceed and the Court directed plaintiff to serve the summons and complaint upon defendants pursuant to Fed. R. Civ. P. 4(m). Defendants, the City of New York and Suarez, answered plaintiff's complaint and these parties

conducted discovery. These defendants requested permission to move for summary judgment, a briefing schedule was set, and plaintiff opposed defendants' motion.[7]

# DISCUSSION

## I. Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997) (quoting Anderson, 477 U.S. at 248 ); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000). For the purposes of summary judgment, the facts here are viewed in the light most favorable to plaintiff.

---

[7] Meekins and Pendergrass failed to respond to plaintiff's complaint, and on October 18, 2007, the Court directed that a default judgment be entered against them pursuant to Fed. R. Civ. P. 55(a). The Court addresses their motion to vacate the entry of default separately.

"An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita, 475 U.S. at 586-87 (1986). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). When a party is proceeding *pro se*, the Court is obliged to "interpret that party's supporting papers liberally, that is, 'interpret them to raise the strongest arguments that they suggest.'" Forsyth v. Federation Employment and Guidance Service, 409 F.3d 565, 569 (2d Cir. 2005) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

## II.     False Arrest and False Imprisonment Claims

Plaintiff's false arrest claim under § 1983 alleges that defendants violated his Fourth Amendment right to be free from unreasonable seizure without probable cause. In Heck v. Humphrey, the United States Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, [or] declared invalid by a state tribunal . . . A claim for damages bearing that relationship to conviction or a sentence that has *not* been so invalidated is not cognizable under § 1983.

8

512 U.S. 477, 486-87 (1994). Here, plaintiff pled guilty on October 18, 2004 to second-degree criminal contempt, the offense for which he was arrested on January 15, 2003. See Certificate of Disposition, attached to Castro Decl. as Exhibit F; 56.1 Statement ¶ 53.

A conviction on the offense for which an individual is arrested is a defense to a § 1983 action that the arrest was made without probable cause. See Cameron v. Fogarty, 806 F.2d 380, 388-89 (2d Cir. 1986). "This principle applies equally when the individual is convicted upon a guilty plea." Rivera v. City of Yonkers, 470 F.Supp.2d 402, 407 (S.D.N.Y. 2007) (citing Thomas v. Roach, 165 F.3d 137, 144 (2d Cir. 1999)). Plaintiff argues in his opposition to defendants' motion that while he "sought to take his case to trial, plaintiff . . . knew there would be a chance that he would not get a fair trial" and knew that he could have been "incarcerated for many years." Plaintiff claims that he therefore pled guilty to criminal contempt "under duress." Plaintiff's "Memorandum of Law in Support of Motion in Opposition to Defendants Motion for Summary Judgment and/or Stay Civil Proceedings for Trial" ("Pl. Opp.") at unnumbered p. 11-12. Nonetheless, as plaintiff pled guilty, his claims of false arrest and false imprisonment are barred under Heck as his conviction has not been invalidated. 512 U.S. at 486-87.

Even if plaintiff's conviction were overturned, however, "[u]nder New York law, the existence of probable cause is an absolute defense to a false arrest claim." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006); see Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). Moreover, "the elements of a false arrest claim under § 1983 are substantially the same as the elements of a false arrest claim under New York law." Mitchell v. Home, 377 F.Supp.2d 361,

371 (S.D.N.Y. 2005) (citing Boyd v. City of N.Y., 336 F.3d 72, 75 (2d Cir. 2003)) (other citations omitted).

Probable cause "is not a particularly demanding standard." United States v. Scala, 388 F. Supp. 2d 396, 401 (S.D.N.Y. 2005). It is determined by looking at what facts an officer had available at the time of, and immediately prior to, arrest. See Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002). Probable cause determinations look to the totality of the circumstances. Id. A police officer who has probable cause to arrest the plaintiff is justified in doing so. Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (probable cause "requires an officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested").

Here, defendants had probable cause to arrest plaintiff. Plaintiff admits in his complaint that Meekins filed a police report "stating that the plaintiff, Maurice Dudley drove his company oil truck through her block on three separate occassion [sic] on January 15, 2003, and blew his horn and that a fourth time the plaintiff, got out of his company oil truck to fight her without any cause." Compl., Statement of Facts ¶ 6; see also Crim. Compl. Although plaintiff alleges that the police report Meekins filed against him was false, the arresting officer was entitled to rely on it to arrest plaintiff as the report constituted "reasonably trustworthy information . . . that an offense has been committed." Panetta, 460 F.3d at 395. "[A] police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Martinez v. Simonetti, 202 F.3d 625, 635 (2d Cir. 2000) (internal quotation and citation omitted). Moreover, police may rely on a victim's account as probable cause for an arrest. See Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001). Furthermore, at his deposition, plaintiff admitted that he knew about the order of

protection ordering him to stay away from Meekins. Dep. at 121:23-24. Defendants had probable cause to arrest plaintiff based on Meekins's police report and the order of protection. Therefore, even if the action was not barred by the rule of <u>Heck</u>, plaintiff's arrest was supported by probable cause. Accordingly, defendants' motion for summary judgment on plaintiff's false arrest claim should be granted.

## III.   Post-Arrest Claims

A plaintiff in an action under 42 U.S.C. § 1983 must establish (1) that he has been deprived of a federally protected right, and (2) that he was deprived of that right by a person acting under color of state law. <u>See</u> <u>American Manufacturers Mutual Insurance Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999); <u>Pitchell v. Callan</u>, 13 F.3d 545, 547 (2d Cir. 1994). There is no dispute that defendants acted under color of state law here. As for protected rights, plaintiff's complaint alleges that defendants used excessive force and evinced deliberate indifference to his medical needs during his detention on January 15, 2003, in violation of federal law. <u>See</u> Compl., Statement of Facts ¶¶ 7-8. The Court addresses these claims in turn.

### A.   Excessive Force

Plaintiff's claim that defendants used excessive force against him during his pretrial detention is analyzed under the Fourteenth Amendment to the U.S. Constitution. <u>See</u> <u>United States v. Walsh</u>, 194 F.3d 37, 47 (2d Cir. 1999) ("[T]he right of a pretrial detainee to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment.") "This is because '[a] person lawfully committed to pretrial detention has not been adjudged guilty of any crime,' and thus, under the Due Process Clause, may not be punished in any manner—neither

cruelly and unusually nor otherwise." Benjamin v. Fraser, 343 F.3d 35, 49-50 (2d Cir. 2003) (quoting Bell v. Wolfish, 441 U.S. 520, 536 (1979)).

A pretrial detainee states a claim for excessive force "even if the victim does not suffer serious, or significant injury, provided that the amount of force used is more than de minimis, or involves force that is repugnant to the conscience of mankind." Walsh, 194 F.3d at 48 (applying test in Hudson v. McMillian, 503 U.S. 1 (1992) to pretrial detainees under the Fourteenth Amendment) (internal quotations omitted). Under Hudson, "whenever [police] officials stand accused of using excessive physical force in violation of the [Constitution], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6-7.

Plaintiff alleges that he was "assaulted" when an officer at the 79th Precinct "placed his knee directly into plaintiff's chest while he laid on the bench handcuffed," while "the other officers cut plaintiff's belt and shoe laces off." Compl., Statement of Facts ¶ 7. Plaintiff admits that Officer Suarez was not involved in removing his belt and shoelaces. See Def. Mem. at 6; Dep. at 143:18-23; 144:1-3. Defendants argue that the force used by other officers to remove plaintiff's belt and shoelaces after he refused to do so himself was *de minimis*. See Def. Mem. at 7-9 (citing Hudson, 503 U.S. at 7). Plaintiff contends that defendants' version of the events is "absolutely false, fabricated and fra[u]dulent as well as misleading." Pl. Opp. at unnumbered p. 14. However, as the Court finds that there is no genuine issue of material fact, defendants are entitled to judgment as a matter of law.

The officers requested plaintiff to remove his belt and shoelaces when he was in the holding cell. Plaintiff admits that he "refused to take off his belt and shoe strings." Compl., Statement of

12

Facts ¶ 7. The force used by the officers was therefore "a good-faith effort to maintain or restore discipline," and not force to "maliciously and sadistically [] cause harm." Hudson, 503 U.S. at 6-7. On the facts alleged, no reasonable jury could find that the force used by the unidentified defendants to remove plaintiff's belt and shoelaces when he refused to do so violated plaintiff's constitutional rights. Accordingly, defendants' motion for summary judgment should be granted on this claim.

## B.    Deliberate Indifference to Medical Need

As with excessive force, claims by pretrial detainees that they were denied adequate medical care are examined under the Due Process Clause of the Fourteenth Amendment. See City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 244-45 (1983); Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996). The Second Circuit has made clear that "an unconvicted detainee's rights are at least as great as those of a convicted prisoner," and that defendants may be found liable if they "denied treatment needed to remedy a serious medical condition and did so because of [] deliberate indifference to that need." Weyant, 101 F.3d at 856.

In Estelle v. Gamble, the United States Supreme Court held that deliberate indifference to the serious medical needs of prisoners, such as "intentionally denying or delaying access to medical care" by prison guards, "constitutes the 'unnecessary and wanton infliction of pain.'" 429 U.S. 97, 104-05 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). However, not every claim by a prisoner "that he has not received adequate medical treatment" is a constitutional violation. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105.

13

The deliberate indifference standard contains both an objective and a subjective component. See Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Objectively, an alleged deprivation must be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation omitted). "Subjectively, the charged official must act with a sufficiently culpable state of mind." Id. In other words, when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Plaintiff alleges that after being taken into custody at the 79th Precinct, he requested medical attention for the pain in his head from the fight with Pendergrass and the pain in his chest from when his belt and shoelaces were removed. Plaintiff was taken to the hospital "about a half hour, 45 minutes later." Compl., Statement of Facts ¶ 8; 56.1 Statement ¶¶ 37-38; Dep. at 138: 5-6. While plaintiff "contends that his right to medical attention were [sic] clearly intended to be violated by these defendants," he offers no evidence to support this contention. Pl. Opp. at unnumbered p. 16.

Defendants demonstrate that plaintiff was taken to the hospital for medical care. X-rays were taken, plaintiff was given Motrin and an ice pack, and he was discharged from the hospital. See Med. Recs. Plaintiff's claim that defendants delayed bringing him to the hospital for thirty to forty-five minutes does not establish deliberate indifference to his medical needs. Defendants' summary judgment motion should therefore be granted on this claim.

**IV.    Claim Against the City of New York**

A municipality can be liable under § 1983 if a plaintiff shows that a municipal policy or custom caused the deprivation of his or her constitutional rights.  See Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-91 (1978); City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (municipal liability must be based on proof that harm was caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker).  Although a municipality is not liable under § 1983 for the conduct of a lower-level employee based solely on vicarious liability, see DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998), a plaintiff may infer a custom, policy, or practice claim via circumstantial evidence, "such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Ricciuti v. New York City Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991).  However, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." Id.  Moreover, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality . . . [A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 404 (1997).

Plaintiff argues that the City of New York has "a custom, policy and practice of not reviewing illegal acts and/or prejudice [sic] acts committed by . . . defendants for the 79th precinct who make arrest [sic] and prosecute citizens who are being accused of willfully [sic] in violation of a Court Order of Protection." Compl., Statement of Claim ¶ 46.  Plaintiff's claim against the City for his arrest on January 15, 2003 for violating the order of protection to stay away from Meekins fails to

demonstrate that an officially adopted municipal custom, policy, or practice caused the deprivation of his constitutional rights. Defendants' motion for summary judgment should therefore be granted.

## CONCLUSION

It is respectfully recommended that defendants' motion for summary judgment should be granted and plaintiff's complaint against these defendants should be dismissed. It is further recommended that for the purpose of an *in forma pauperis* appeal, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from a judgment entered herein would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated: August 14, 2008
      Brooklyn, New York